

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-2002

# Benenson Assoc Inc v. Orthopedic Network

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3746

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Benenson Assoc Inc v. Orthopedic Network" (2002). *2002 Decisions.* Paper 723.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/723

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 01-3746 and 02-1206

_____

MICHAEL J. BENENSON ASSOCIATES, INC.
d/b/a BENENSON & ASSOCIATES,

Appellant,

v.

ORTHOPEDIC NETWORK OF NEW JERSEY
d/b/a GARDEN STATE ORTHOPEDIC NETWORK,
JAMES W. DWYER, M.D.,
and SOMERSET ORTHOPEDIC ASSOCIATES, P.A.,

Appellees.

_____

On Appeal from the United States District Court
for the District of New Jersey
(Civil Action No. 98-3332)
District Judge:  The Honorable Nicholas H. Politan

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 13, 2002

Before: ALITO and FUENTES, Circuit Judges and OBERDORFER*, District Judge
(Opinion Filed: November 8, 2002)

* The Honorable Louis F. Oberdorfer, United States District Judge for the District of
Columbia, sitting by designation.

_____

FUENTES, Circuit Judge:

This civil action was filed in 1998 by plaintiff Michael J. Benenson Associates, Inc. d/b/a Benenson & Associates, Inc. (BAI) against defendant Orthopedic Network of New Jersey d/b/a Garden State Orthopedic Network (GSON), a network of physicians, to recover fees of about $141,000 for consulting work it provided to GSON.[1]  Following a non jury trial and the submission of proposed findings of fact and conclusions of law, the District Court determined that BAI and GSON had made an oral agreement to resolve their fee dispute and that GSON had breached that agreement.  Accordingly, the court awarded BAI $51,000 with prejudgment interest.  Contending that the court erred in enforcing the oral agreement and that, instead, BAI should have been permitted to pursue its original underlying claim for $141,000, BAI appeals. We affirm.

## I. Facts and Procedural Background

Plaintiff brought suit against defendants seeking recovery for services rendered under various theories including book account, quantum meruit, account stated, voidable transfer, fraudulent conveyance, piercing the corporate veil, and settlement.  The District Court conducted a bench trial over four days during which the parties presented evidence and the court had an opportunity to assess the credibility of the witnesses.  At the conclusion of the

---

[1]BAI also brought claims against Dr. James W. Dwyer and Somerset Orthopedic Associates, P.A.

evidence and after considering the parties' submissions, the District Court issued a Letter Opinion in which it made findings of fact and conclusions of law.

The District Court found that, on March 20, 1995, defendant SOA, a network of physicians, hired Albert J. Zdenek, a financial planner, to help SOA set up the then-nonexistent defendant GSON, which was also to be a network of physicians. The individual defendant, Dr. James Dwyer, then a principal of SOA, entered into a retainer agreement with Zdenek on behalf of SOA and GSON. Zdenek then hired plaintiff to assist in the creation of defendant GSON. Pursuant to the terms of the retainer, Zdenek included plaintiff's bills with the invoices defendant SOA was to pay. SOA paid these invoices in May of 1995. A month later, GSON was legally formed. In August of 1995, GSON's board members became concerned about the mounting costs of establishing and operating GSON. On or about September 12, 1995, GSON decided to terminate its relationship with Zdenek and to hire plaintiff to work for it directly.

The District Court explained that the parties disagreed as to the terms of the agreement between plaintiff and defendant GSON. The court stated that, while plaintiff insisted that defendant promised to pay its bills as they came due, defendant insisted that payment was contingent on plaintiff successfully obtaining managed care contracts for the defendant. On behalf of GSON, Dr. Dwyer asserted at trial that plaintiff was not entitled to payment because it did not obtain managed care contracts for defendant.

The District Court found that the parties reached a settlement of plaintiff's outstanding bills in April of 1996. The District Court found that the settlement came about when Dr.

Dwyer wrote to plaintiff on January 16, 1996, asking for a 50% reduction in fees. Michael Benenson, the plaintiff's president, needed an infusion of cash and, therefore, agreed in April of 1996 to accept a reduced fee in exchange for immediate payment. The agreement provided that, of the approximately $141,000 in fees outstanding, Benenson would accept $71,000, with $51,000 to be paid immediately. Advanced Health Care, a company that purchased plaintiff, was to pay the remaining $20,000. The District Court found that defendant GSON never paid plaintiff the settlement amount agreed to between the parties.

Based on these findings, the District Court ruled that plaintiff was entitled to recover $51,000, together with prejudgment interest, by virtue of the enforceable oral settlement agreement between plaintiff and GSON. In its Letter Opinion, the court also dismissed the remainder of plaintiff's claims as well as defendant's counterclaims. Thereafter, plaintiff filed a motion for reconsideration contending that the court erred because it did not make findings of fact and conclusions of law as to plaintiff's alternate theories of recovery concerning the underlying debt. The District Court rejected this contention, reasoning as follows:

> [s]imply put, BAI asserted numerous alternative theories of recovery in its Second Amended Complaint, and the Court concluded it was entitled to recover on the settlement agreement, to the exclusion of all other claims. As such, no additional findings were necessary.

App. at 19-20. The District Court also rejected plaintiff's assertion that it misapprehended the law and the facts with respect to plaintiff's fraudulent conveyance claim. *See* App. at 17. Subsequently, the District Court denied plaintiff taxation of certain costs because plaintiff's motion failed to comport with Local Civil Rule 54.1. Plaintiff timely appealed the District

-4-

Court's final order of judgment and the order on plaintiff's motion with respect to costs.

## II.  Jurisdiction and Standard of Review

The District Court exercised jurisdiction over this matter under 28 U.S.C. § 1332.  We have appellate jurisdiction under 28 U.S.C. § 1291.

We accept the trial court's findings of fact unless clearly erroneous and exercise plenary review of the court's interpretation of legal precepts and its application of those precepts to the historical facts.  See Mellon Bank, N.A. v. Metro Communications, Inc., 945 F.2d 635, 642 (3d Cir. 1991) (citing Universal Minerals, Inc. v. C.A. Hughes & Co., 669 F.2d 98, 101-02 (3d Cir. 1981)).  Taxation of costs under Federal Rule of Civil Procedure 54(d)(1) is reviewed only for abuse of discretion.  See In re Paoli Railroad Yard PCB Litigation, 221 F.3d 449, 458 (3d Cir. 2000).

## III.  Discussion

On appeal, plaintiff asserts that the parties' settlement agreement constitutes an executory accord and that, because defendant did not satisfy the accord, plaintiff is entitled to sue on the original claims.  Defendant, on the other hand, asserts that the settlement agreement is a substitute contract.  Defendant asserts that the District Court correctly decided that, notwithstanding the breach by plaintiff, "the substitute agreement is what  must be enforced now, not [plaintiff's] claims regarding former invoices."  Appellee's Br. at 8.

Both the doctrines of substitute contract and accord and satisfaction come into play when contracting parties agree to alter the terms of their original agreement by entering into a new agreement.  Whether the parties resolve their differences by entering into a substitute

contract or through an accord and satisfaction is significant because the remedy for a breach of the new agreement depends on its nature.

"An accord and satisfaction is a substitute contract for settlement of a debt by some alternative other than full payment . . . [in which t]he consideration is the resolution of a disputed claim." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 147-48 (3d Cir. 1999). When an accord is breached, the nonbreaching party may elect to enforce the underlying agreement or the accord. See id. at 148. A substitute contract, on the other hand, is an exchange of promises which extinguishes the underlying debt. See Pan American World Airlines, Inc. v. Midlantic National Bank/ North, Civ. A. No. 87-3404, 1990 WL 61784, at *4 (D.N.J. May 7, 1990). The exchange of promises itself, rather than performance of the substituted obligation, is what extinguishes liability on the underlying debt. See id. We have previously held that a novation works the same way.

In Agusta, we explained that "[i]n a novation, the new promise itself satisfies the preexisting claims, whereas in an accord it is the performance of the new promise that does so." Agusta, 178 F.3d at 148. We also explained that the "essential difference between an accord and a novation is the parties' intent[,]" and that the "existence of a substituted contract is essentially for the jury."[2] Id. See also Publicker Indus., Inc. v. Roman Ceramics Corp., 603 F.2d 1065, 1071 (3d Cir. 1979) ("[t]o determine whether a contract acts as a novation or an

_____

[2]In Agusta, we used the terms "novation" and "substituted contract" interchangeably. This is consistent with Arthur Corbin's teaching that "[a]ll novations are substituted contracts; and the converse is also true that all substituted contracts are novations[.]" Corbin on Contracts § 1293, at 189.

accord executory, intent of the parties is the key."); Corbin on Contracts § 1293, at 199 ("Whether the new agreement or 'accord' is itself accepted as an immediate discharge of the prior claim–as a substituted contract–or is not so accepted, is merely a question of reasonable interpretation of the expressions of the parties.").

In its Findings of Fact and Conclusions of Law, the District Court noted that Dr. Dwyer, who was acting on behalf of defendant GSON, wrote a letter to plaintiff on January 16, 1996, requesting a 50% reduction in fees and that, in April of 1996, plaintiff's president, Michael Benenson, agreed to accept the reduced fee in exchange for immediate payment. Dr. Dwyer testified that the reduced bill was a means of working things out with plaintiff, as Dr. Dwyer did not believe plaintiff to be entitled to payment of its fees because payment was contingent on plaintiff obtaining managed care contracts for defendant GSON, and plaintiff had failed to do so. See App. at 140:14. Dr. Dwyer also testified that he had met with Benenson on five or six separate occasions in August of 1995 and asked for more bills to be provided because he thought that the underlying debt was "not legitimate." App. at 169:17.

These findings are consistent with the District Court's conclusion that the settlement agreement operated as a substituted contract. Given that the amount owed to plaintiff was in dispute, there was a basis for the trier of fact, here the District Court, to conclude that the parties intended to extinguish the underlying debt in order to liquidate the amount owed and, therefore, that plaintiff's recourse was limited to enforcement of the amount defendant promised to pay it in the settlement.

Based on the foregoing, we conclude that the District Court properly dismissed Counts

-7-

I through IV of plaintiff's complaint, specifically, the claims for services rendered, a book account, quantum meruit and account stated on the basis that recovery on the settlement agreement necessarily foreclosed recovery on these alternate theories of recovery. We also reject plaintiff's assertion that the District Court erred in dismissing the remainder of its claims.

Furthermore, we cannot say that the District Court's decision to deny an award of costs to plaintiff was an abuse of discretion in light of plaintiff's failure to comply with Local Civil Rule 54.1[3] by failing to provide invoice documentation of the items for which it sought reimbursement. Accordingly, we affirm the District Court's denial of the costs sought by plaintiff.

## IV. Conclusion

After carefully considering the arguments discussed above and all other arguments

---

[3]Local Civil Rule 54.1 provides:

> (b) [The] Bill of Costs shall precisely set forth each item thereof, so that the nature of the charge can be readily understood, and shall be verified by the attorney for the applicant, stating that (1) the items are correct, (2) the services were actually and necessarily performed, and (3) the disbursements were necessarily incurred in the action or proceeding. Counsel shall append to the verified Bill of Costs copies of all invoices in support of the request for each item.

> ****

> (e) Upon failure of the prevailing party to comply with this Rule, all costs shall be waived.

United States District Court for the District of New Jersey Local Civil Rule 54.1 (emphasis added).

advanced by the Appellant, we affirm the District Court's decision in all respects.

_____

TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

By the Court,

/s/ Julio M. Fuentes

Circuit Judge